We'll proceed with today's day calendar. The first case is Anthony at Night versus State University of New York at Stony Brook. You would usually be going second, now you're going first. Go right ahead. Thank you, Your Honors. Good morning. May it please the court, Caroline Olsen on behalf of the State University of New York at Stony Brook. With the court's permission, I have just a few very brief points that I would like to make. However, I'm happy to go for as short as the court would like. This court should affirm the jury's verdict that Anthony Knight is not an employee of SUNY Stony Brook. As laid out in our brief, we think that Knight has forfeited most of his objections to the jury's verdict. I'm happy to answer any questions the court may have in that regard, but I'd like to address a few brief issues relating to the merits of the case. And the primary issue I'd like to address is why SUNY and the union have negotiated their relationship in this way. From the union's perspective, this arrangement obviously gives the union a relatively stable source of employment for its workers. But as part of the arrangement, it also gives the union a significant degree of independence, which is what it insisted upon as part of the negotiations. As the evidence adduced at trial substantiated, the union was solely responsible for referring workers to SUNY. A union representative had exclusive control over who was released from work. And as the SUNY employees testified, it was understood that the union would broker no interference with internal union affairs. It's winter in New Haven, is it your position that Knight is an independent contractor or that the union is the independent contractor? Because the question for Title VII purposes is whether a worker is an employee, there was no affirmative showing one way or the other at trial as to whether Knight was an employee, I'm sorry, was an independent contractor or subcontractor. But I think the evidence is very much consistent with him being an independent contractor. As the cases we cite in our brief make clear, skilled tradesmen like Anthony Knight are typically considered independent contractors. Did Knight govern how the electrical work would be done? I'm sorry, can you repeat the question? Did Knight decide how the electrical work would be done? What are the indicia that tell us that Knight, rather than the union, was an independent contractor? That's right, and he did have a significant degree of control over how the work was performed. As the testimony at trial made clear, he would receive plans about how the building was actually supposed to be structured, and then was expected to implement those plans correctly, just basically reading the schematics. Now Murphy, another union worker, was responsible for ensuring the quality of that work. But no one at SUNY was a skilled electrician, and so they could not, as a practical matter, direct the way that he actually installed the electrical cabling. That was something that was exclusively within the purview of the union, and the union was responsible for certifying the quality of the work. Does it matter to you whether the union or Mr. Knight is characterized as an independent contractor? It doesn't, Your Honor. For us, the question for Title VII purposes is whether he's an employee of Stony Brook or not, and we don't think that he is. It's important to remember, too, that the hospital here is not in the business of construction. It has regular capital improvement projects, but doesn't have a need to have skilled tradesmen who can handle these kinds of specialized construction projects on its staff. Well, except it does have employees who are skilled electricians, right? It has a very few numbers, certainly not enough to handle large-scale projects like the project at issue here. Typically, it has, on average, about three to four skilled electricians. I think, in total, about 13 skilled tradesmen who could potentially work on a construction project. And so even on the project at issue here, the hospital actually used an independent contractor, a private firm, to handle the outfitting, the sort of exterior of the building. And so the typical arrangement here is for the hospital to go and use independent contractors, so there's nothing unusual about the relationship between SUNY and the union. Do you need to persuade us that Mr. Knight was not an employee, or do you only need to persuade us that there was sufficient evidence that a reasonable jury could find that he was not an employee? I think that that gets to a couple of issues with respect to both preservation, but I think it gets to one issue, which could be answered yes or no to start with. I think that it was enough that the jury found that there was sufficient evidence that he was not an employee. But, again, we don't think the Court even needs to reach this issue because it's he did not make, that Knight did not make a Rule 50 motion. Well, if we did reach it, well, whether he made a Rule 50 motion depends on really the same thing, in a sense, which is, is this an issue for the jury or for the Court? And I was wondering, the case that I thought is most on point for that is Kirsch v. Fleet Street, which is cited in passing in your brief and not at all by Mr. Knight. But that's Judge Keir's opinion, you may remember. I thought that was almost identical in terms of the structure of the situation to this, and the Court said it was properly put to the jury. I think that's right. I think in the Solomon, there's a footnote in Solomon that suggests that maybe the issue is an open question, but I think Kirsch is directly on point and says it is a proper issue for the jury, and even were it not to be, it would have been a harmless error because no, the Knight did not, Knight has no vested right into a judge deciding an issue as a, the issue as opposed to a jury. Well, but it would make a difference, again, at least assuming the issue is preserved. It would make a difference to the scope of our review because if this were a legal issue to be decided by the Court, we would have de novo review. If it was properly put to the jury, then our only review would be whether a reasonable jury could reach that conclusion, whatever we might think. Well, I would also note, Your Honor, just briefly that there's also a preservation issue, even with respect to the question as to whether this is an issue for the jury or the judge. Knight objected at trial to the issue going to the jury because he thought there was overwhelming evidence that he was, in fact, an employee, but he never objected to the issue going to the court, going to the jury, nor did he contend that this was a pure issue of law. And typically he objected to it going to the jury, but only on the grounds that there was insufficient evidence, not on the grounds that under no circumstances should it be put to the jury. That's exactly correct. And moreover, the Court even flagged for the parties that this, the footnote in Solomon saying this is an open question or it might be an open question, but I'm going to send it to the jury anyway. So the issue was squarely flagged, and Knight still did not make an objection that this was an issue of law that should not go to the jury. One of the questions that Judge Winter asked before, which is what is the relationship here? Whom is he an employee of? For example, usually the situation is there's a subcontractor hired by SUNY. It's an electrical subcontractor. If there's a Title VII violation, you can sue your employer who's the subcontractor if you're an electrician, even if you're a union electrician. But here's this odd situation of hiring people from a union hall or Local 25, right? That's right. And I'm just wondering, for someone like Murphy, his boss, who had been at SUNY for years and years and had this odd arrangement of every certain number of weeks taking a couple weeks off so he wouldn't be an employee, how does Title VII protect him over a 20-year career? Can he ever sue anybody for any kind of sex harassment or discrimination or race discrimination? Where does he go? So I think the answer to that question is that, just take a step back and remember that the question for Title VII and the reason independent contractors are usually not given Title VII protection is because they have a degree of control over their employment. That is true for Murphy, who is a skilled worker whose skills are translatable and can be brought to other projects. But in the event that, because they're independent contractors, it doesn't mean they don't have access to the courts. As we lay out in our brief, it's possible that Murphy or Knight would be able to bring Title VII or federal labor law lawsuits against the union for a duty of fair representation. What about discrimination? Well, they might be able to bring a claim under Title VII for discrimination. There's also a possibility of a Knight. Against whom? I mean, who would be the employer in that case? Well, it wouldn't necessarily be employer as much as it would be a contractual question. It would really be a kind of Section 1981 suit for example. Suppose Murphy came in one day and said, the first day that Knight showed up, said, oh, I didn't know you were black. I don't want you. The remedy for that would be a Section 1981 claim of interfering with the right to contract based on race. Is that the idea? I think against Murphy that's definitely an option. If he brought his What about a woman instead? I mean, 1981 is just race. It's not sex. What if a woman comes in and Murphy says, I don't want a woman working as an electrician here. They don't do as good a work as men. I want a man. Have the union hall send us a man. What does she do? Well, in that instance, I think the woman would be able to go to the union and explain what happened. And remember, the union has its own internal grievance and investigation procedures. In the event that the union upheld that action, Murphy acting as an agent then might be, might make the union liable for a duty of fair representation claim. Suppose it was someone at SUNY who noticed that there was a woman electrician working and told Murphy, I don't want her working on our project. Send her home and ask the union for somebody else for as a man. Would there be no recourse against, would there be recourse against SUNY? I think, again, this all gets back to the union because then the woman would have the recourse to go to her shop steward or her foreman, in this case Murphy, explain what happened. This is exactly why the union is there. If the union respected that decision, she might then have an action against the union. It was asserted, I think, in your brief, but I wasn't sure I found evidence in the record that SUNY had to take whoever the union sent under their arrangement with the union. Is there actual evidence of that? The evidence is that the SUNY witnesses testified that they did not believe that they had any control over who the union sent over, and the union used a strict referral list. There's some, the CBA agreement that would typically be in place between an employer but which was not in place with SUNY did give SUNY veto rights over workers, but the SUNY witnesses did not, there's no evidence that SUNY ever exercised or thought that it had that right. I mean, is it your position ultimately just that, well, Title VII doesn't cover everybody, doesn't cover employees who work for very small employers, you know, it doesn't cover independent contractors as such if they're not employees, and that's Congress's choice. The issue here is simply whether he was or was not an employee. That's correct. Title VII does not cover all individuals, and the reasons for extending its protections are mitigated here where we have someone who could easily be an independent contractor but also has a union to back him up to represent his interests in wages, in hours, in benefits, and also to investigate work grievances arising from discrimination. Unless the Court has any further questions, we'd ask you to affirm. Thank you. Thank you.